**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| WATERKEEPER ALLIANCE, INC.<br>180 Maiden Lane, Suite 603<br>New York, NY 10038,<br><br>LEAD Agency, Inc.<br>19289 S. 4403 Drive<br>Vinita, OK 74301,<br><br>and<br><br>SIERRA CLUB<br>2101 Webster Street, Suite 1300<br>Oakland, CA  94612<br><br>        Plaintiffs,<br><br>    v.<br><br>ANDREW WHEELER,<br>ACTING ADMINISTRATOR, U.S.<br>ENVIRONMENTAL PROTECTION<br>AGENCY, in his official capacity<br>William Jefferson Clinton Building<br>1200 Pennsylvania Avenue, NW<br>Washington, DC 20460,<br><br>and<br><br>U.S. ENVIRONMENTAL<br>PROTECTION AGENCY<br>William Jefferson Clinton Building<br>1200 Pennsylvania Avenue, NW<br>Washington, DC 20460<br><br>        Defendants. | Civil Action No. 1:18-cv-2230<br><br><br>COMPLAINT FOR DECLARATORY<br>AND INJUNCTIVE RELIEF |

Plaintiffs Waterkeeper Alliance, Inc., Local Environmental Action Demanded Agency, Inc. ("LEAD Agency"), and Sierra Club (collectively "Plaintiffs") hereby bring a citizen suit pursuant to 42 U.S.C. § 6972(a)(2) against Defendants Andrew Wheeler, Acting Administrator of the United States Environmental Protection Agency, and the United States Environmental Protection Agency (collectively "EPA" or "Defendants"), for failing to perform a nondiscretionary duty required by the Resource Conservation and Recovery Act ("RCRA") to develop and publish minimum guidelines for public participation in state coal combustion residuals ("coal ash" or "CCR") programs.  Plaintiffs also allege violations of RCRA and the Administrative Procedure Act ("APA") by Defendants for unlawfully approving Oklahoma's coal ash permit program.  *See* Oklahoma: Approval of State Coal Combustion Residuals Permit Program, 83 Fed. Reg. 30,356 (June 28, 2018) ("Final Program Approval"), attached hereto as Exhibit A.

## INTRODUCTION

1.      Coal-fired power plants in the U.S. generate one of the largest and most toxic solid waste streams in the nation, including large quantities of heavy metals and metal compounds such as arsenic, boron, cadmium, chromium, lead, mercury, selenium, and thallium. These toxic chemicals can cause cancer and other adverse health impacts including reproductive, neurological, respiratory, and developmental problems.

2.      For decades, in the absence of national standards requiring safe disposal, coal ash was dumped in thousands of unlined and unmonitored lagoons, landfills, pits, and mines.  The result was the widespread release of dangerous pollutants from coal ash to water, air, and soil, endangering human health and the environment.

3.      In 2015, EPA promulgated regulations to begin to address the longstanding threats posed by coal ash.  *See* Hazardous and Solid Waste Management System; Disposal of Coal Combustion Residuals from Electric Utilities, 80 Fed. Reg. 21,302 (Apr. 17, 2015) ("2015 Rule") (codified at 40 C.F.R. § 257.50 *et seq*).

4.      In 2016, Congress passed the Water Infrastructure Improvements for the Nation Act ("WIIN Act"), which directs EPA to approve state coal ash permit programs to operate "in lieu of" federal regulations provided that the state program meets several conditions.  *See* 42 U.S.C. § 6945(d).  For a state coal ash program to be approved, the state standards for coal ash units must be "at least as protective as" the federal standards, and the state must require that covered coal ash dumps in the state "achieve[] compliance" with those standards.  *See id.* § 6945(d)(1)(B)(ii), (D)(ii)(I).

5.      In addition to the WIIN Act, there are other RCRA requirements that apply to EPA action on state coal ash programs under 42 U.S.C. § 6945(d).  One such requirement is set out in RCRA section 7004(b)(1), which states that "[p]ublic participation in the development, revision, implementation, and enforcement of any . . . program under [RCRA] shall be provided for, encouraged, and assisted by the Administrator and the States.  The Administrator . . . shall develop and publish minimum guidelines for public participation in such processes."  42 U.S.C. § 6974(b)(1).  Another such requirement is RCRA section 4004(a), which directs EPA to allow the continued operation of only those solid waste disposal facilities – including coal ash dumps – that do not present a "reasonable probability of adverse effects on health or the environment." *Id.* § 6944(a).

6.      Notwithstanding its receipt – and subsequent approval – of at least one application for approval of a state coal ash program, EPA has not fulfilled its non-discretionary duty to

develop and publish minimum guidelines for public participation in state coal ash programs pursuant to 42 U.S.C. § 6974(b)(1).

7.     On August 21, 2018, the D.C. Circuit partially vacated the 2015 Rule for failure to ensure "no reasonable probability of adverse effects on health or the environment" as required by RCRA section 4004(a).  *Util. Solid Waste Activities Grp. v. EPA*, 901 F.3d 414, No. 15-1219, 2018 WL 4000476, at *1-2 (D.C. Cir. Aug. 21, 2018) (hereinafter "*USWAG v. EPA*") (quoting 42 U.S.C. § 6944(a)).  The court ordered that "the Final Rule be vacated and remanded with respect to the provisions that permit unlined impoundments to continue receiving coal ash unless they leak, *see* [40 C.F.R.] § 257.101(a), classify 'clay-lined' impoundments as lined, *see* 40 C.F.R. § 257.71(a)(1)(i), and exempt from regulation inactive impoundments at inactive facilities, *see* 40 C.F.R. § 257.50(e)."  Judgment, *Util. Solid Waste Activities Grp. v. EPA*, No. 15-1219, 2018 WL 4158384, at *1 (D.C. Cir. Aug. 21, 2018) (hereinafter "*USWAG* Judgment").

8.     Oklahoma's coal ash regulations, approved by EPA less than a month prior to the D.C. Circuit's decision in *USWAG v. EPA*, contain provisions nearly identical to the provisions vacated by the D.C. Circuit.  The corresponding provisions in Oklahoma's coal ash regulations are Okla. Admin. Code 252:517-15-6(a), 252:517-11-2(a)(1)(A), and 252:517-1-1(d).

9.     Notwithstanding the clear mandate of the WIIN Act and other applicable RCRA requirements, EPA has unlawfully approved a state coal ash program that allows unsafe impoundments full of toxic coal ash to continue operating, deprives the public of their right to review and comment on critical compliance documents, and grants coal ash dumps permits that never expire.  EPA's approval of Oklahoma's coal ash program is also unlawful due to EPA's failure to publish minimum public participation guidelines for state programs prior to approving

that program, and due to EPA's failure to respond to two significant comments expressing concerns about the program.  *See* 5 U.S.C. § 706(2)(A), (D); 42 U.S.C. § 6974(b)(1).

10.     With this action, Plaintiffs seek to compel the promulgation of public participation regulations for state coal ash programs and to vacate EPA's approval of Oklahoma's flawed coal ash program.

## JURISDICTION & VENUE

11.     This action arises under RCRA, 42 U.S.C. § 6901 *et seq.*

12.     This Court has jurisdiction over Count 1 pursuant to 42 U.S.C. § 6972(a), and over all Counts pursuant to 28 U.S.C. §§ 1331 and 1361.  This Court may issue a declaratory judgment and grant further relief pursuant to 42 U.S.C. § 6972(a) and 28 U.S.C. §§ 2201 and 2202.

13.     Plaintiffs are authorized to bring Count 1 of this action pursuant to 42 U.S.C. § 6972(a)(2), the citizen suit provision of RCRA.

14.     Plaintiffs are authorized to bring Counts 2 through 7 of this action pursuant to the Administrative Procedure Act, 5 U.S.C. § 551 *et seq.*, which provides for judicial review of final agency actions for which there is no other adequate remedy in a court.

15.     By registered letter posted July 26, 2018, as well as via email, Plaintiffs gave notice to Defendants of the failure to perform a mandatory duty alleged in Count 1 and have thereby complied with the sixty-day notice requirement of the RCRA citizen suit provision.  *See* 42 U.S.C. § 6972(c).  A copy of the notice letter is attached hereto as Exhibit B.

16.     Venue is proper in this Court because Defendants reside in this district, the failure to act alleged in Count 1 occurred in this district, and the Final Program Approval giving rise to Counts 2 through 7 of this lawsuit was issued in this district.  *See* 28 U.S.C. § 1391(e).  Venue is also proper in this Court on Count 1 because the RCRA citizen suit provision expressly provides

that any action under 42 U.S.C. § 6972(a)(2) may be brought in the District Court for the District of Columbia.  *See* 42 U.S.C. § 6972.

## PARTIES

17.     Waterkeeper Alliance, Inc. is a non-profit headquartered in New York, New York, uniting more than 300 Waterkeeper Member Organizations and Affiliates that are on the frontlines of the global water crisis, patrolling and protecting more than 2.5 million square miles of waterways on six continents.  From the Great Lakes to the Himalayas, Alaska to Australia, the Waterkeeper movement defends the fundamental human right to drinkable, fishable, and swimmable waters, and combines firsthand knowledge of local waterways with an unwavering commitment to the rights of communities.  Within the United States, Waterkeeper Alliance, Inc. works with more than 170 Waterkeeper Member Organizations and Affiliates.

18.     LEAD Agency is a non-profit headquartered in Vinita, Oklahoma, with a satellite office in Miami, Oklahoma, and with members in the Grand River Watershed focusing on issues that affect it and its water quality.  LEAD Agency has advocated for the cleanup of Tar Creek and the Tar Creek Superfund Site, and for the downstream restoration and eventual cleanup of the Tri-State Mining District affecting three states with legacy mining of lead and zinc.  It is a Waterkeeper Member Organization and stands with the Waterkeeper movement for drinkable, fishable, and swimmable waters.

19.     Sierra Club is America's largest grassroots environmental organization, with more than 3 million members and supporters nationwide, including more than 4,200 members in Oklahoma.  Sierra Club's mission is to explore, enjoy, and protect the wild places of the earth; to practice and promote the responsible use of the Earth's resources and ecosystems; to educate and enlist humanity to protect and restore the quality of the natural and human environment; and to

use all lawful means to carry out those objectives.  Its activities include public education, advocacy, and litigation to enforce environmental laws**.**

20.    Plaintiffs have individual and/or organizational members who have been and, unless the relief prayed for herein is granted, will continue to be adversely affected by EPA's failure to comply with RCRA, the purpose of which is to promote the protection of human health and the environment by assuring that both solid and hazardous waste management is conducted responsibly.  EPA's approval of Oklahoma's flawed coal ash program, as well as its failure to publish minimum public participation guidelines for state coal ash programs, increase the likelihood that Plaintiffs' members and their environment will be injured by unsafe waste management practices that lead to contamination from dangerous pollutants in coal ash.

21.    Plaintiffs' members live, work, and recreate near coal ash units affected by EPA's approval of Oklahoma's coal ash program and by EPA's failure to promulgate minimum public participation requirements for state coal ash programs.  These members' use and enjoyment of local waterways –and for some, their use and enjoyment of their own property– has been, and/or threatens to be, diminished due to coal ash pollution.

22.    Plaintiffs' members are concerned that coal ash dumps in Oklahoma will continue to pollute, further diminishing their use and enjoyment of these waterways and property and possibly harming their health.  They would like to, and if given the opportunity would, exercise their right to review industry and agency proposals for compliance with safeguards at coal ash dumps in Oklahoma, as well as to testify or submit comments to agency officials to express their concerns about those proposals and how they affect their environment, health, and well-being.

23.    Defendants' failure to promulgate required minimum guidelines for public participation in state coal ash programs, as well as their unlawful approval of Oklahoma's coal

ash program, (a) deprives Plaintiffs' members of opportunities to exercise their right to be notified of, review, and provide input to government agencies about those coal ash dumps; (b) increases the risk to Plaintiffs' members of exposure to contaminants in coal ash waste; and (c) in some cases, increases and prolongs Plaintiffs' members' ongoing exposure to such contaminants and their associated risk of adverse health effects accordingly.

24.     Defendant Andrew Wheeler is the Acting Administrator of the United States Environmental Protection Agency.  He is sued in his official capacity only.

25.     Defendant United States Environmental Protection Agency is an agency of the federal government.

## LEGAL FRAMEWORK

### I.     The Resource Conservation and Recovery Act, as Amended by the Water Infrastructure Improvements for the Nation Act, and the 2015 Rule

26.     Congress enacted RCRA in 1976, amending the Solid Waste Disposal Act, *see* Pub. L. No. 89-272, 79 Stat. 997-1001 (1965), to establish a comprehensive federal program to regulate the handling and disposal of solid waste.  *See* Pub. L. No. 94-580, 90 Stat. 2795 (1976) (codified as amended at 42 U.S.C. § 6901 *et seq*).  In so doing, Congress recognized that, as a result of regulation under the Clean Air Act, the Clean Water Act, and other laws, American industries were generating more toxic sludge and other pollution treatment residues that required proper disposal.  *See* 42 U.S.C. § 6901(b)(3).  Further, Congress recognized that "inadequate and environmentally unsound practices" for the disposal of such solid wastes were responsible for air and water pollution that posed an unacceptable threat to human health and the environment.  *See id*.  RCRA was meant to ensure that such solid wastes were handled responsibly and did not re-enter the environment.

27.     The goal of RCRA is to promote the protection of health and the environment and to conserve valuable material and energy resources by ensuring the safe treatment, storage, and disposal of solid waste.  *See id.* § 6902.  To achieve this goal, RCRA requires that EPA, among other things: prohibit "open dumping" on the land and close existing open dumps; provide for the management and disposal of hazardous waste in a manner that protects human health and the environment; and promulgate guidelines for responsible solid waste collection and disposal practices.  *Id.* § 6902(a)(3)-(5), (8).

28.     RCRA authorizes the EPA Administrator to prescribe regulations as necessary to accomplish the goals of RCRA.  *See id.* § 6912(a)(1).  RCRA specifically directs EPA to publish minimum criteria that differentiate "open dumps," which are prohibited, from "sanitary landfills," which are permitted.  *See id.* §§ 6907(a), 6944(a).  The criteria for sanitary landfills must guarantee "no reasonable probability of adverse effects on health or the environment from disposal of solid waste" at sanitary landfills.  *Id.* § 6944(a).

29.     RCRA also calls for extensive public participation to ensure the public has many opportunities to provide input into, and enhance the protectiveness of, standards for the treatment, storage, and disposal of solid waste.  This mandate is codified in RCRA section 7004(b)(1), which states that "[p]ublic participation in the development, revision, implementation, and enforcement of any . . . program under [RCRA] shall be provided for, encouraged, and assisted by the Administrator and the States.  The Administrator . . . shall develop and publish minimum guidelines for public participation in such processes."  42 U.S.C. § 6974(b)(1).

30.     In order to fulfill the mandatory duty set out in RCRA section 7004(b)(1), EPA has promulgated several sets of public participation regulations that apply to different areas of

RCRA enforcement.  *See* 40 C.F.R. pt. 25 (various programs, including state hazardous waste programs); *id.* pt. 239 (state municipal solid waste landfill programs); *id.* pt. 256 (state solid waste management plans).

31.     In 2015, following a district court ruling directing EPA to devise a schedule to comply with its obligation to regulate coal ash under RCRA,[1] EPA promulgated the 2015 Rule pursuant to its authority to regulate "open dumps" under RCRA Subtitle D.  *See* 42 U.S.C. §§ 6907(a), 6944(a); 80 Fed. Reg. 21,302.  The 2015 Rule established national minimum criteria for coal ash impoundments including location restrictions; design and operating criteria; groundwater monitoring, corrective action, and post-closure requirements; and recordkeeping, notification, and disclosure obligations.  *See* 80 Fed. Reg. 21,302.

32.     A coalition of environmental groups, including Waterkeeper Alliance, Inc. and Sierra Club, petitioned for review of the 2015 Rule pursuant to section 7006(a)(1) of RCRA, 42 U.S.C. § 6976(a)(l).  After consolidation with various industry petitions, the environmental petitioners argued, among other points, that the 2015 Rule was unlawful inasmuch as it allowed unlined surface impoundments to continue to operate, classified "clay-lined" impoundments as lined, and failed to regulate legacy (inactive) surface impoundments at coal plants that were no longer in operation as of the effective date of the rule.  *See USWAG v. EPA*, 2018 WL 4000476, at *5.

33.     During the pendency of that lawsuit, Congress passed the WIIN Act, Pub. L. No. 114-322, 130 Stat. 1628 (2016), an amendment to RCRA that directs EPA to approve State "permit program[s] . . . for regulation by the State of coal combustion residuals units" to operate

---

[1] *See Appalachian Voices v. McCarthy*, 989 F. Supp. 2d 30, 56 (D.D.C. 2013).

"in lieu of" federal coal ash regulations provided that the state program meets several conditions. *See* 42 U.S.C. § 6945(d).  For a state coal ash program to be approved, the state standards for coal ash units must be "at least as protective as" the federal standards, and the state must require that covered coal ash dumps in the state "achieve[] compliance" with those standards.  *See id.* § 6945(d)(1)(B), (C), (D)(ii)(I).  The WIIN Act also provides that a coal ash disposal site only qualifies as a "sanitary landfill" if it is in full compliance with either a permit issued by a State, a permit issued by EPA in a nonparticipating state, or the federal standards for coal ash units set forth at 40 C.F.R. Part 257.  *Id.* § 6945(d)(6).

34.     EPA subsequently issued non-binding guidance to serve as "a technical resource to States that may be useful in developing and submitting a State CCRs Permit Program to EPA for approval."  *See* Release of Interim Final Guidance for State Coal Combustion Residuals Permit Programs; Comment Request, 82 Fed. Reg. 38,685, 38,685 (Aug. 15, 2017).  EPA did not promulgate any binding regulations setting out minimum public participation requirements – or any other requirements – for approval of state coal ash programs.

35.     On August 21, 2018, the D.C. Circuit issued its decision in *USWAG v. EPA* granting relief on three claims upon which environmental petitioners had sought review.  *See USWAG v. EPA*, 2018 WL 4000476.  The decision partially vacated the 2015 Rule because it had failed to guarantee "no reasonable probability of adverse effects on health or the environment" as required by RCRA section 4004(a).  *See id.*; *USWAG* Judgment, 2018 WL 4158384, at *1.  The court held, in relevant part, that the 2015 Rule's "approach of relying on leak detection followed by closure" for unlined and clay-lined coal ash impoundments violated RCRA because it "does not address the identified health and environmental harms" the record evidenced at those impoundments.  *USWAG v. EPA*, 2018 WL 4000476, at *9-11.

36.     The court ordered that "the Final Rule be vacated and remanded with respect to the provisions that permit unlined impoundments to continue receiving coal ash unless they leak, *see* [40 C.F.R.] § 257.101(a), classify 'clay-lined' impoundments as lined, *see* 40 C.F.R. § 257.71(a)(1)(i), and exempt from regulation inactive impoundments at inactive facilities, *see* 40 C.F.R. § 257.50(e)." *USWAG* Judgment, 2018 WL 4158384, at *1.

## II.     The Administrative Procedure Act

37.     The Administrative Procedure Act ("APA") provides that "[t]he reviewing court shall . . . hold unlawful and set aside" agency action found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right," or "without observance of procedure required by law."  5 U.S.C. § 706(2).

38.     The APA requires agencies to engage in a notice-and-comment process prior to formulating, amending, or repealing a rule.  *Id.* §§ 551(5), 553.  This process is designed to "give interested persons an opportunity to participate in the rule making through submission of written data, views, or arguments."  *Id.* § 553(c).

39.     Under the APA, "final agency action for which there is no other adequate remedy in a court" is "subject to judicial review."  *Id.* § 704.

## III.    Oklahoma Environmental Permitting and Coal Ash Regulations

40.     Under Oklahoma law, permits for coal ash units are governed by the Oklahoma Uniform Environmental Permitting Act ("UEPA"), 27A Okla. Stat. § 2-14-101 *et seq.*, implementing regulations codified at Okla. Admin. Code 252:4-7-1 *et seq.* and 252:517.  *See* Okla. Admin. Code 252:517-3-3(a) ("All permit applications are subject to the Oklahoma Uniform Environmental Permitting Act as well as the requirements of this Subchapter.")

41.     The UEPA establishes three "tiers" of permits, set out, in relevant part, at Okla. Admin. Code 252:4-7-58 through 60.  "Tier I" permits include "technical plans," "modification of plans for closure and/or post-closure," modifications of pre-existing permits to allow "lateral expansion within permitted boundaries," to grant "a request for less than twenty-five percent (25%) increase in permitted capacity for storage," to make other "minor changes," and "[a]ll other administrative approvals required by solid waste rules."  *See* Okla. Admin. Code 252:4-7-58(2), (3).

42.     With the exception of notice of a landowner, there are no opportunities for public participation for Tier I permits under Oklahoma's permitting scheme.  *See* 27A Okla. Stat. § 2-14-103(9); Okla. Admin. Code 252:4-7-2.

43.     Oklahoma's coal ash rules grant permits to coal ash disposal units "for the life" of the unit.  *See* Okla. Admin. Code 252:517-3-1(a).

## FACTUAL BACKGROUND

### I.     The Toxic Hazards Posed by Coal Ash

44.     Each year, power plants in the U.S. burn over 800 million tons of coal and, as a result, generate approximately 110 million tons of coal combustion residuals or "coal ash."  Most of the coal ash, comprised of fly ash, bottom ash, boiler slag, and flue gas desulfurization sludge, is disposed of in unlined or inadequately lined surface impoundments (ponds), landfills, structural fills, and mines.  *See USWAG v. EPA*, 2018 WL 4000476, at *2.

45.     Coal ash contains "myriad carcinogens and neurotoxins," including arsenic, boron, cadmium, hexavalent chromium, lead, lithium, mercury, molybdenum, selenium, and thallium.  *Id.* at *1-2.  Exposure to these carcinogens and neurotoxins creates elevated risks of skin, liver, bladder, and lung cancer, as well as "non-cancer risks such as neurological and

psychiatric effects, cardiovascular effects, damage to blood vessels, and anemia." *See id.* at *2 (quotation marks omitted).

46.     Arsenic is a known human carcinogen that causes cancer of the skin, liver, bladder, and lungs. 80 Fed. Reg. at 21,451. Boron "can pose developmental risk to humans when released to groundwater and can result in stunted growth, phytotoxicity, or death to aquatic biota and plants when released to surfacewater bodies." Hazardous and Solid Waste Management System: Disposal of Coal Combustion Residuals From Electric Utilities; Amendments to the National Minimum Criteria (Phase One); Proposed Rule, 83 Fed. Reg. 11,584, 11,589 (Mar. 15, 2018). Lead is a very potent neurotoxin that can cause "kidney disease, lung disease, fragile bone[s], decreased nervous system function, high blood pressure, and anemia." Hazardous and Solid Waste Management System; Identification and Listing of Special Wastes; Disposal of Coal Combustion Residuals From Electric Utilities; Proposed Rule, 75 Fed. Reg. 35,128, 35,169 (June 21, 2010). Mercury is also a neurotoxin, and exposure can result in "permanently damage the brain, kidneys, and developing fetus." *Id.* Molybdenum exposure can result in "higher levels of uric acid in the blood, gout-like symptoms, and anemia." 80 Fed. Reg. at 21,451.

47.     Coal ash disposal sites are "massive." *USWAG v. EPA*, 2018 WL 4000476, at *2. There are over 310 coal ash landfills scattered across the United States, averaging 120 acres in area and 40 feet deep. *Id.* There are at least 735 surface impoundments around the country that are currently receiving coal ash, as well as many "inactive" surface impoundments that contain, but are no longer actively receiving, coal ash. *Id.* Those surface impoundments average 50 acres in size and 20 feet deep. *Id.* Both landfills and surface impoundments carry "risk of structural

failure, particularly where they are located in unstable areas such as wetlands or seismic impact zones." *Id.* at *3.

48.     There are five facilities in Oklahoma with coal ash sites now covered by Oklahoma's coal ash regulations. *See* Ex. A, Final Program Approval, 83 Fed. Reg. at 30,357 & n.4. Those facilities include unlined surface impoundments containing coal ash. *See* Plaintiffs' comments on the proposed approval of Oklahoma's coal ash plan ("Environmental Comments"), attached hereto as Exhibit C, at 3-5.

49.     Increasing evidence shows that coal ash is polluting groundwater at Oklahoma's coal ash disposal sites. Publicly available documents reveal evidence of extensive contamination at the sites. *See id.* at 3-6. That contamination includes dangerous concentrations of pollutants such as arsenic, cadmium, chromium, thallium, and molybdenum in groundwater at American Electric Power's Northeastern coal plant near Oologah, Oklahoma; at the Grand River Dam Authority's coal ash landfill adjacent to the Grand River near Choteau, Oklahoma; at the coal ash impoundments and landfill at the Hugo coal plant near Ft. Towson, Oklahoma; and at the "Big Fork Ranch" coal ash landfill that abuts the Arkansas River in Marland, Oklahoma. *Id.*

## II.     Oklahoma's Coal Ash Program

50.     EPA received Oklahoma's application for approval of its coal ash program ("the Application") – the first application of its kind – on August 3, 2017. *See* Ex. A, Final Program Approval, 83 Fed. Reg. at 30,357.

51.     The Application revealed that Oklahoma's regulations do not require that many compliance proposals and plans – documents detailing site-specific practices that coal ash units propose to use to comply with the federal standards and equivalent Oklahoma standards – be included in applications for a new permit. Specifically, Oklahoma's regulations do not require applicants for new coal ash permits to submit, as part of their permit application: (a) their

certifications that their groundwater monitoring system and groundwater sampling and analysis program meet applicable requirements, (b) their post-closure care plan, (c) any retrofit plan, (d) any certification that an alternative groundwater monitoring frequency is appropriate, or (e) any plans or specifications demonstrating that the coal ash disposal site meets certain critical design requirements for coal ash impoundments, including hazard potential assessments, structural stability assessments, safety factor assessments, and emergency action plans.  *See* Oklahoma Admin. Code 252:517-3-6(a).  Each of those documents is required, where applicable,[2] by the federal coal ash standards to demonstrate compliance with those standards.  *See* 40 C.F.R. §§ 257.73-74, 257.91, 257.93, 257.94(d), 257.102(k)(2), 257.104(d).

52.     The Application also left largely unclear which permit modifications for already-permitted coal ash disposal sites would be classified as Tier II versus Tier I.

53.     EPA proposed approval of Oklahoma's program by notice in the *Federal Register* dated January 16, 2018.  *See* Oklahoma: Approval of State Coal Combustion Residuals State Permit Program, 83 Fed. Reg. 2100 (Jan. 16, 2018).

---

[2] All coal ash units must obtain certifications that their groundwater monitoring programs and groundwater sampling programs meet the standards for those programs. 40 C.F.R. §§ 257.91(f), 257.93(f)(6).  All coal ash units must also have written post-closure plans.  *Id.* § 257.104(d).  If owners or operators of coal ash units wish to monitor groundwater on a different schedule than required by the federal standards, they must demonstrate the need for that alternate frequency and obtain a certification stating that the demonstration meets applicable requirements.  *Id.* § 257.94(d)(3).  If they wish to retrofit a unit instead of closing it, they must prepare a retrofit plan.  *Id.* § 257.102(k)(2).  All coal ash impoundments must prepare hazard potential assessments, structural stability assessments, and safety factor assessments; emergency action plans are required for certain impoundments with high or significant hazard potential.  *Id.* §§ 257.73, 257.74.

54.     On March 19, 2018, Plaintiffs submitted comments opposing the approval

("Environmental Comments"), which are attached hereto as Exhibit C.  Plaintiffs argued that

EPA should deny Oklahoma's application for approval, arguing among other points that:

     a.   EPA must promulgate enforceable regulations setting out minimum public

        participation requirements for state coal ash programs before approving any such

        program, *see* Ex. C, Environmental Comments at 41-43;

     b.   Oklahoma's program fails to ensure that the public has the opportunity to

        comment on permitting and post-permitting documents addressing compliance

        with regulatory requirements, as required by RCRA section 7004(b), 42 U.S.C.

        § 6974(b), and 40 C.F.R. Part 239, *see* Ex. C, Environmental Comments at 28-32,

        35-36; and

     c.   Oklahoma's practice of granting permits "for life" contravenes the WIIN Act

        because it allows permits to remain in force even when they do not require

        compliance with standards "at least as protective as" revised federal standards.

        *See* Ex. C, Environmental Comments at 20-22.

55.     On June 28, 2018, EPA approved Oklahoma's coal ash program, with an effective

date of July 30, 2018.  *See* Ex. A., Final Program Approval, 83 Fed. Reg. 30,356.

56.     EPA's approval encompasses both Oklahoma's coal ash regulatory scheme as it

will be applied to coal ash dumps in the state in the future, as well as permits issued to CCR units

prior to EPA's approval of the program.  *See id.* at 30,357, 30,363-64.

57.     EPA acknowledged in the Final Program Approval that certain plans required by

the Oklahoma and federal coal ash standards to demonstrate compliance with those standards,

including coal ash units' "fugitive dust control plans," "run-on/runoff control system plans," and

modifications to closure or post-closure plans or other "technical plans," are classified by Oklahoma DEQ as "Tier I" permits.  *See id.* at 30,358.

58.      EPA further acknowledged in the Final Program Approval that "all existing CCR landfills in [Oklahoma] submitted Tier I modification requests to change the applicable standards in their permit from the previous state solid waste standards at OAC 252:215 to the new CCR standards at OAC 252:217. As a Tier I modification, the public would not have had opportunity for input into these 252:517 CCR landfill permits.  Further, the public will not have opportunity for comment on these 'permits for life' in the future unless the permit is modified under a Tier II or Tier III modification."  *Id.* at 30,363.

59.      Many documents in the record confirm that DEQ has classified, and continues to classify, as "Tier I" various critical plans required by the Oklahoma and federal coal ash standards to demonstrate compliance with those standards.  Those plans include groundwater sampling and analysis programs, groundwater monitoring plans, closure plans, post-closure plans, fugitive dust control plans, and run-on/runoff control system plans for multiple coal ash disposal sites in Oklahoma.

60.      Contemporaneous with the notice in the *Federal Register*, EPA released, as one of the documents in the administrative record for this action, a Comment Summary and Response Document.  Docket ID No. EPA-HQ-OLEM-2017-0613-0073 (June 2018) ("Response to Comments").

61.      EPA acknowledged that no existing regulations setting out public participation requirements apply to the approval of state coal ash programs.  *See* Ex. A, Final Program Approval, 83 Fed. Reg. at 30,358; Response to Comments at 8-9.

62.     Among the provisions EPA approved in Oklahoma's coal ash program is the provision granting permits to coal ash disposal units "for the life" of the unit.  *See* Okla. Admin. Code 252:517-3-1(a); Ex. A, Final Program Approval, 83 Fed. Reg. at 30,363.

63.     Also among the provisions EPA approved in Oklahoma's coal ash program are regulations identical[3] to those vacated by the D.C. Circuit in *USWAG v. EPA*.  Those provisions are codified at Okla. Admin. Code 252:517-15-6(a), 252:517-11-2(a)(1)(A), and 252:517-1-1(d). *See* Ex. A, Final Program Approval.

## CLAIMS FOR RELIEF

### Count 1 – Violation of 42 U.S.C. § 6974(b)(1).

(EPA was Required, but Failed, to Publish Minimum Guidelines for Public Participation in State Coal Ash Programs)

64.     Plaintiffs re-allege and incorporate the allegations of all the preceding paragraphs of this Complaint, as well as all exhibits, as if fully set forth herein.

65.     Under section 7004(b) of RCRA, the Administrator, in cooperation with the states, "shall develop and publish minimum guidelines for public participation" in the "development, revision, implementation, and enforcement of any regulation, guideline, information, or program" under RCRA.  *See* 42 U.S.C. § 6974(b)(1).

66.     The Administrator's duty to publish minimum guidelines for public participation under section 7004(b) is nondiscretionary.

67.     State coal ash programs that EPA is authorized to approve under the WIIN Act are RCRA programs with respect to which EPA must comply with RCRA section 7004(b).

---

[3] In the Oklahoma regulations, references to the Code of Federal Regulations have been replaced with references to the relevant provisions of Oklahoma's rules.

68.     EPA has not published minimum guidelines for public participation in the "development, revision, implementation, and enforcement" of state coal ash programs.

69.     No existing regulations setting out minimum public participation requirements apply to state coal ash programs.

70.     EPA's failure to issue public participation guidelines constitutes a "failure of the Administrator to perform any act or duty under this chapter which is not discretionary with the Administrator" within the meaning of 42 U.S.C. § 6972(a)(2).

71.     Unless EPA performs its non-discretionary duty to issue public participation guidelines for state coal ash programs, Plaintiffs and their members will suffer irreparable harm.

72.     Plaintiffs have no adequate remedy at law, and therefore equitable relief is warranted.

## Count 2 – Violations of 42 U.S.C. § 6945(d) and 5 U.S.C. § 706(2)(C).

### (The D.C. Circuit's Decision Partially Vacating the 2015 Rule Renders the Final Program Approval Invalid)

73.     Plaintiffs re-allege and incorporate the allegations of all the preceding paragraphs of this Complaint, as well as all exhibits, as if fully set forth herein.

74.     The D.C. Circuit's decision in *USWAG v. EPA* vacated portions of the 2015 Rule because they failed to guarantee "no reasonable probability of adverse effects on health or the environment," as required by RCRA section 4004(a).  *USWAG v. EPA*, 2018 WL 4000476, at *1-2; 42 U.S.C. § 6944(a).

75.     Due to that vacatur, EPA lacked the authority to approve Oklahoma's state coal ash program as "at least as protective as" federal coal ash standards pursuant to the WIIN Act, 42 U.S.C. § 6945(d)(1)(B)(ii).

19

76.     Because Oklahoma's coal ash program contains provisions that are substantively identical to those vacated by the D.C. Circuit, approval of the program unlawfully allows operation of coal ash units that fail to meet the standard of RCRA section 4004(a).

77.     EPA's approval of Oklahoma's state coal ash program based on regulations that violate RCRA section 4004(a), *id.* § 6944(a), exceeded EPA's authority under the WIIN Act, *id.* § 6945(d).

78.     EPA's approval of Oklahoma's state coal ash program constituted "agency action . . . in excess of statutory jurisdiction, authority, or limitations," 5 U.S.C. § 706(2)(C), as well as "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," *id.* § 706(2)(A).

**Count 3 – Violation of 42 U.S.C. § 6974(b) and 5 U.S.C. § 706(2)(A).**

(EPA's Approval of Oklahoma's Coal Ash Program Without First Publishing Minimum Guidelines for Public Participation in State Coal Ash Programs Violates 42 U.S.C. § 6974(b) and the APA)

79.     Plaintiffs re-allege and incorporate the allegations of all the preceding paragraphs of this Complaint, as well as all exhibits, as if fully set forth herein.

80.      Under section 7004(b) of RCRA, the Administrator, in cooperation with the states, "shall develop and publish minimum guidelines for public participation" in the "development, revision, implementation, and enforcement of any regulation, guideline, information, or program" under RCRA.  42 U.S.C. § 6974(b)(1).

81.     The Administrator's duty to publish minimum guidelines for public participation under Section 7004(b) is nondiscretionary.

82.     Oklahoma's coal ash program is a RCRA program, to which RCRA section 7004(b) applies.

83.     EPA's approval of Oklahoma's coal ash program without first promulgating the public participation guidelines required by 42 U.S.C. § 6974(b) and ensuring that Oklahoma's coal ash program met those minimum requirements constitutes "agency action" that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A).

## Count 4 – Violation of 42 U.S.C. § 6974(b) and 5 U.S.C. § 706(2)(A)

(EPA's Approval of Oklahoma's Coal Ash Program Notwithstanding Its Inadequate Public Participation Opportunities Violates 42 U.S.C. § 6974(b) and the APA)

84.     Plaintiffs re-allege and incorporate the allegations of all the preceding paragraphs of this Complaint, as well as all exhibits, as if fully set forth herein.

85.     In addition to a mandate that EPA issue public participation guidelines, section 7004(b) of RCRA provides that "[p]ublic participation in the development, revision, implementation, and enforcement of any regulation, guideline, information, or program under this chapter shall be provided for, encouraged, and assisted by the Administrator and the States." 42 U.S.C. § 6974(b)(1).

86.     Oklahoma's coal ash program does not afford public participation opportunities in the development and implementation of numerous compliance proposals and compliance demonstration documents essential for the implementation of its regulations for coal ash units.

87.     By approving Oklahoma's coal ash program notwithstanding that program's failure to afford public participation opportunities on many critical documents, EPA violated its duty to "provide[] for, encourage[], and assist[]" public participation in "any . . . program" under RCRA.  *Id.*

88.     EPA's approval of Oklahoma's state coal ash program in contravention of the requirements of 42 U.S.C. § 6974(b)(1) constituted "agency action" that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A).

**Count 5 – Violation of 42 U.S.C. § 6945(d)(1)(B), (d)(1)(D)(ii)(I), and 5 U.S.C. § 706(2)(A).**

(EPA's Approval of the Oklahoma Coal Ash Program's Grant of "Permits for Life" Contravenes the WIIN Act)

89.     Plaintiffs re-allege and incorporate the allegations of all the preceding paragraphs of this Complaint, as well as all exhibits, as if fully set forth herein.

90.     The WIIN Act allows approval of state coal ash programs only if they ensure that coal ash units located in the state meet standards "at least as protective as" federal coal ash standards.  *See* 42 U.S.C. § 6945(d)(1)(B), (C); *see also id.* § 6945(d)(1)(D)(ii)(I).

91.     RCRA requires EPA to "review[] and, where necessary, revise[]" all regulations implementing the statute, including those for coal ash, every three years.  *See* 42 U.S.C. § 6912(b).

92.     At the time it approved Oklahoma's coal ash program, EPA had already proposed to revise the federal coal ash standards.  *See* Ex. C, Environmental Comments at 21.

93.     Whenever EPA revises the federal coal ash standards codified at 40 C.F.R. pt. 257, EPA must review approved state programs within three years to evaluate whether the program "continues to ensure that each [CCR] unit located in the state" is complying with requirements at least as protective as the revised federal standards.  42 U.S.C. § 6945(d)(1)(D)(ii)(I); *see also id.* § 6945(d)(1)(D)(i)(II).

94.     Oklahoma's coal ash regulations direct DEQ to grant permits "for the life of the CCR unit."  Okla. Admin. Code 252:517-3-1(a).

95.     Oklahoma's coal ash program does not require that permits for coal ash units be revoked or revised to ensure that each CCR unit in the state achieves compliance with standards at least as protective as any revised federal coal ash standards.

96.     Thus, permits for coal ash units in Oklahoma may remain in force even when they do not require compliance with standards "at least as protective as" revised federal standards.

97.     Accordingly, Oklahoma's coal ash state permit program does not meet the standard for state program approval set forth in 42 U.S.C. § 6945(d)(1).

98.     EPA's approval of Oklahoma's state coal ash program in contravention of the standard set forth in 42 U.S.C. § 6945(d)(1) constituted "agency action" that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

## Count 6 – Violation of 5 U.S.C. § 706(2)(A), (D).

(EPA's Failure to Respond to Plaintiffs' Comment that EPA Violated 42 U.S.C. § 6974(b) by Failing to Promulgate Minimum Public Participation Guidelines Violates the APA)

99.     Plaintiffs re-allege and incorporate the allegations of all the preceding paragraphs of this Complaint, as well as all exhibits, as if fully set forth herein.

100.     Section 553(c) of the APA obliges an agency to "give interested persons an opportunity to participate in the rule making through submission of written data, views, or arguments" and then "incorporate in the rules adopted a concise general statement of their basis and purpose." 5 U.S.C. § 553(c).

101.     As part of that obligation, agencies must "must respond to those comments which, if true, would require a change in the proposed rule." *Genuine Parts Co. v. EPA*, 890 F.3d 304, 313 (D.C. Cir. 2018) (quoting another source).

23

102.    The WIIN Act similarly provides for state program approvals only "after public notice and an opportunity for public comment."  42 U.S.C. § 6945(d)(1)(B).

103.    Plaintiffs commented that EPA violated RCRA section 7004(b) by approving the Oklahoma coal ash program without first issuing regulations setting out minimum public participation opportunities for state CCR programs.  *See* Ex. C, Environmental Comments at 41-43.

104.    If true, that comment would require a change to the proposed rule because EPA may not act arbitrarily, capriciously, or contrary to law.  *See* 5 U.S.C. § 706(2)(A), (D).

105.    EPA did not respond to the comment in either the Final Program Approval or the Response Document.  EPA acknowledged, in its Response to Comments, that it had received that comment.  *See* Ex. C, Response to Comments at 13.  However, EPA offered no response, noting only that "RCRA section 4005(d) does not require EPA to promulgate regulations for determining the adequacy of state programs."  *Id.* at 14.

106.    EPA's failure to respond to the comment regarding public participation guidelines violated the APA, 5 U.S.C. § 553(c) and the WIIN Act.

107.    EPA's approval of Oklahoma's coal ash program after failing to respond to a significant comment constituted "agency action" that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" and "without observance of procedure required by law."  *Id.* § 706(2)(A), (D).

### Count 7 – Violation of 5 U.S.C. § 706(2)(A), (D).

(EPA's Failure to Respond to Plaintiffs' Comment that Permits for Life Contravene the WIIN Act Violates the APA)

108.    Plaintiffs re-allege and incorporate the allegations of all the preceding paragraphs of this Complaint, as well as all exhibits, as if fully set forth herein.

24

109.   Plaintiffs commented that Oklahoma's granting of permits for life contravenes the WIIN Act because it fails to guarantee that CCR sites will be under requirements at least as protective as federal standards.  *See* Ex. C, Environmental Comments at 20-22.

110.   If true, that comment would require a change to the proposed rule because EPA may not act arbitrarily, capriciously, or contrary to law.  *See* 5 U.S.C. § 706(2)(A), (D).

111.   EPA did not respond to the comment in either the Final Program Approval or the Response Document.  EPA responded in both the Final Program Approval and the Response to Comments that "nothing in the Federal rule prohibits" granting permits for life.  Ex. A, EPA Final Approval, 83 Fed. Reg. at 30,363; Response to Comments at 12.  However, EPA did not address the argument that permits for life are inconsistent with the WIIN Act itself.

112.   EPA's failure to respond to the comment regarding permits for life under the WIIN Act violated the APA, 5 U.S.C. § 553(c), and the WIIN Act.

113.   EPA's approval of Oklahoma's state coal ash program after failing to respond to a significant comment constituted "agency action" that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" and "without observance of procedure required by law."  *Id.* § 706(2)(A), (D).

## **PRAYER FOR RELIEF**

For the foregoing reasons, Plaintiffs request that the Court:

a.   declare that Defendants have violated the Resource Conservation and Recovery Act in failing to promulgate minimum public participation guidelines governing the approval of state coal ash programs;

b.   order Defendants to issue necessary public participation guidelines as soon as possible in accordance with RCRA section 7004(b);

c.  declare that EPA's approval of the Oklahoma coal ash permit program was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right," and/or "without observance of procedure required by law," in violation of the APA, 5 U.S.C. § 706(2);

d.  vacate EPA's approval of Oklahoma's coal ash permit program;

e.  award Plaintiffs their litigation costs and reasonable attorneys' fees in this action; and,

f.  provide any other necessary and appropriate relief.


DATED: September 26, 2018                  Respectfully submitted,

                                           /s/ Jennifer Cassel
                                           Jennifer Cassel (Bar ID IL0025)
                                           Earthjustice
                                           1101 Lake St., Suite 308
                                           Oak Park, IL 60301
                                           (215) 717-4525
                                           jcassel@earthjustice.org

                                           /s/ Charles McPhedran
                                           Charles McPhedran (to be admitted *pro hac vice*)
                                           Earthjustice
                                           1617 John F. Kennedy Blvd., Suite 1130
                                           Philadelphia PA  19103
                                           (215) 717-4521
                                           cmcphedran@earthjustice.org

                                           *Counsel for Plaintiffs Waterkeeper Alliance, Inc.,*
                                           *LEAD Agency, and Sierra Club*