UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| WATERKEEPER ALLIANCE, INC., et al., | |
|---|---|
| Plaintiffs, | |
| v. | Civil Action No. 18-2230 (JDB) |
| ANDREW WHEELER, Acting Administrator, U.S. Environmental Protection Agency, et al., | |
| Defendants. | |

## MEMORANDUM OPINION

Plaintiffs are three environmental groups that challenge the EPA's approval of an Oklahoma program regulating the disposal of coal combustion residuals ("CCRs" or "coal ash"), a byproduct of coal-fired power plants.[1] They bring two types of claims: (1) a citizen suit alleging that the EPA failed to perform a nondiscretionary duty to develop and publish minimum guidelines for public participation in the program's approval and (2) Administrative Procedure Act ("APA") claims alleging that the EPA's approval of the program was arbitrary and capricious. Now before the Court are three motions to intervene as defendants pursuant to Federal Rule of Civil Procedure 24(a). Two of the motions are filed by Oklahoma utility companies and an association of utility companies ("industry movants") and the third motion is filed by the State of Oklahoma. While no party opposes applicants' intervention in this action generally, plaintiffs contend that industry movants' intervention should be limited to the APA claims. For the reasons stated herein, all three motions to intervene will be granted as to all claims, subject to certain conditions.

---

[1] Plaintiffs are Waterkeeper Alliance, Inc., Local Environmental Action Demanded Agency, Inc. ("LEAD"), and Sierra Club. Defendants are the EPA and its Acting Administrator, Andrew Wheeler.

1

## BACKGROUND

The Resource Conservation and Recovery Act of 1976 ("RCRA"), Pub. L. 94-580, 90 Stat. 2795 (1976) (codified at 42 U.S.C. §§ 6901 et seq.), created a framework for regulating the treatment, storage, and disposal of hazardous and non-hazardous waste. See Util. Solid Waste Activities Grp. v. EPA, 901 F.3d 414, 420 (D.C. Cir. 2018) [hereinafter USWAG]. In 2015, the EPA promulgated federal regulations governing CCRs under Subtitle D of RCRA. See Hazardous and Solid Waste Management System; Disposal of Coal Combustion Residuals From Electric Utilities ("2015 Rule"), 80 Fed. Reg. 21,302 (Apr. 17, 2015) (codified at 40 C.F.R. § 257.50 et seq.); 42 U.S.C. §§ 6941–6949a. Pursuant to Subtitle D, individuals may file citizen suits against the EPA administrator for failure "to perform any act or duty under this chapter which is not discretionary." 42 U.S.C. § 6972(a)(2).

In 2016, Congress passed the Water Infrastructure Improvements for the Nation Act ("WIIN Act"), Pub. L. No. 114-322, 130 Stat. 1628 (2016) (codified at 42 U.S.C. § 6945(d)). The WIIN Act "amended RCRA . . . to allow the EPA to approve State permitting programs 'to operate in lieu of [the EPA's federal] regulation of [CCR] units in the State,' provided those programs are at least as environmentally protective as the existing [EPA regulations set forth in the 2015 Rule] . . . or successor[] EPA regulations." USWAG, 901 F.3d at 426 (quoting 42 U.S.C. § 6945(d)(1)(A)). Oklahoma developed and submitted a proposed permitting program under the amended RCRA, which the EPA subsequently approved as "at least as protective" as existing federal regulations. Oklahoma: Approval of State Coal Combustion Residuals Permit Program ("Final Rule"), 83 Fed. Reg. 30,356 (June 28, 2018). The program regulations are codified in

Oklahoma law. See Disposal of Coal Combustion Residuals from Electric Utilities, Okla. Admin. Code § 252:517-1-1 et seq.

Shortly thereafter, the D.C. Circuit vacated and remanded parts of the 2015 Rule, holding inter alia that, as to certain provisions, "the EPA acted arbitrarily and capriciously" for failure to fulfill its duty to ensure "no reasonable probability of adverse effects" on health or the environment. USWAG, 901 F.3d at 426–34, 449.

Plaintiffs bring two sets of claims against the EPA. The first, set forth in Count 1 of the complaint, is a citizen suit claiming that the EPA failed to perform a nondiscretionary duty under RCRA, codified at 42 U.S.C. § 6974(b)(1), to develop and publish minimum guidelines for public participation in the design, implementation, and approval of state CCR programs. See Compl. [ECF No. 1] ¶¶ 64–72. The second set of claims, brought under the APA and set forth in Counts 2 through 7, alleges inter alia that the EPA's approval is invalid because some of Oklahoma's CCR regulations mirror those the D.C. Circuit vacated in USWAG and—building on the allegation in the citizen suit—that the EPA's failure to perform its nondiscretionary duty to publish guidelines for public participation under 42 U.S.C. § 6974(b)(1) rendered its approval arbitrary and capricious. Id. ¶¶ 73–83; see generally id. ¶¶ 73–113.

Now, [12] the Oklahoma Gas and Electric Company ("OG&E"), [14] the State of Oklahoma and the Oklahoma Department of Environmental Quality ("Oklahoma"), and [18] the Public Service Company of Oklahoma ("PSO") and the Utility Solid Waste Activities Group ("USWAG") have moved to intervene.[2] USWAG is an electric utility association that represents over 150 electric utilities, including PSO, and OG&E and PSO are electric utility companies with

---

[2] See Mem. in Supp. of Mot. of OG&E to Intervene [ECF No. 12-2] ("OG&E Mot."); Mem. in Supp. of Mot. of USWAG and PSO to Intervene [ECF No. 18-2] ("USWAG & PSO Mot."); The State of Oklahoma's Mot. to Intervene [ECF No. 14] ("Okla. Mot.").

CCR facilities in Oklahoma. See OG&E Mot. at 1; USWAG & PSO Mot. at 2–3. Each applicant seeks intervention as of right as a defendant under Federal Rule of Civil Procedure 24(a).[3]

The EPA does not oppose the motions. See Defs.' Notice of Non-Opp'n to Mots. to Intervene [ECF No. 22]. Plaintiffs take no position on any applicants' intervention with respect to its APA claims in Counts 2 through 7 but oppose intervention of the industry movants as to Count 1, their citizen suit alleging that the EPA failed to comply with a nondiscretionary duty under RCRA. Pls.' Resp. in Opp'n to OG&E's Mot. to Intervene [ECF No. 19] at 1; Pls.' Resp. in Opp'n to Mot. of USWAG & PSO to Intervene [ECF No. 16] at 1–2. The motions are fully briefed and ripe for resolution.

## LEGAL STANDARD

Parties may intervene as of right under Federal Rule of Civil Procedure 24(a) if the Court finds that (1) the application to intervene is timely; (2) the applicant has an interest relating to the property or transaction which is the subject of the action; (3) the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest; and (4) the applicant's interest is not adequately represented by existing parties. See Defs. of Wildlife v. Perciasepe, 714 F.3d 1317, 1322–23 (D.C. Cir. 2013).

Prospective defendant-intervenors must also demonstrate Article III standing by establishing injury in fact, causation, and redressability.[4] See id. at 1323. "In most instances," however, "the standing inquiry will fold into the underlying inquiry under Rule 24(a): generally

---

[3] Movants also seek permissive intervention under Federal Rule of Civil Procedure 24(b) in the alternative. Because the Court finds that movants may intervene as of right, however, arguments concerning permissive intervention need not be addressed.

[4] Movants contend that the Supreme Court's recent decision in Town of Chester, N.Y. v. Laroe Estates, Inc., 137 S. Ct. 1645 (2017), calls this requirement into question. See OG&E Mot. at 7 n.9; USWAG & PSO Mot. at 8 n.5. But the D.C. Circuit has rejected that argument. See Old Dominion Elec. Coop. v. FERC, 892 F.3d 1223, 1232 n.2 (D.C. Cir. 2018) (holding that "Town of Chester . . . does not cast doubt upon . . . our settled precedent that all intervenors must demonstrate Article III standing").

4

speaking, when a putative intervenor has a 'legally protected' interest under Rule 24(a), it will also meet constitutional standing requirements, and vice versa." Wildearth Guardians v. Salazar, 272 F.R.D. 4, 13 n.5 (D.D.C. 2010); see also Roeder v. Islamic Republic of Iran, 333 F.3d 228, 233 (D.C. Cir. 2003) ("With respect to intervention as of right in the district court, the matter of standing may be purely academic. . . . [A]ny person who satisfies Rule 24(a) will also meet Article III's standing requirement.").

Even if an applicant may intervene as of right, courts have discretion to impose conditions or restrictions on the intervenor's participation. Wildearth Guardians, 272 F.R.D. at 13; see also Fed. R. Civ. P. 24 advisory committee's note to 1966 amendment ("An intervention of right . . . may be subject to appropriate conditions or restrictions responsive among other things to the requirements of efficient conduct of the proceedings.").

## ANALYSIS

Although the applications to intervene are largely unopposed, the Court nevertheless will address whether movants meet the factors necessary to establish a right to intervene under Federal Rule of Civil Procedure 24(a).[5] The Court then will address the propriety of placing conditions or restrictions upon movants' intervention.

### I. Intervention as of Right

#### A. Timeliness

In the context of a Rule 24(a) motion to intervene, "timeliness is to be judged in consideration of all the circumstances, especially weighing the factors of time elapsed since the inception of the suit, the purpose for which intervention is sought, the need for intervention as a means of preserving the applicant's rights, and the probability of prejudice to those already parties

---

[5] As part of determining whether movants face impairment of a legally protectible interest the Court also will address Article III standing.

5

in the case." United States v. British Am. Tobacco Austl. Servs., Ltd., 437 F.3d 1235, 1238 (D.C. Cir. 2006) (quoting United States v. Am. Tel. & Tel. Co., 642 F.2d 1285, 1295 (D.C. Cir. 1980)). Here, no party disputes the applications' timeliness. Movants filed the motions to intervene shortly after defendants were served and before this Court had occasion to make any merits decisions. The Court also finds that the motions are filed for the legitimate purpose of defending against a challenge to the EPA's approval of Oklahoma's CCR program—a result which, movants allege, will significantly impair their interests. Finally, there is no suggestion that the timing of the motions has caused any party prejudice. For those reasons, and having considered all the circumstances, the Court finds the applications timely.

### B. Impairment of Legally Cognizable Interest

To satisfy the second and third Rule 24(a) factors, which the Court will consider together, each prospective intervenor must demonstrate "a legally protected interest" that this action will impair or impede should plaintiffs' challenge succeed. See Crossroads Grassroots Policy Strategies v. Fed. Election Comm'n, 788 F.3d 312, 316 (D.C. Cir. 2015). "The test for a legally protected interest is 'primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process.'" United States v. Morten, 730 F. Supp. 2d 11, 16 (D.D.C. 2010) (quoting Seminole Nation of Okla. v. Norton, 206 F.R.D. 1, 8 (D.D.C. 2001)). And to determine if a legally protected interest will be "impaired," courts "look[] to the 'practical consequences' of denying intervention, even where the possibility of future challenge to the regulation remain[s].'" Fund For Animals v. Norton, 322 F.3d 728, 735 (D.C. Cir. 2003) (quoting Natural Res. Def. Council v. Costle, 561 F.2d 904, 909 (D.C. Cir. 1977)). An action has the practical consequence of impairing prospective intervenors' interests when the unsuccessful "disposition of the action would result in a substantial change in the status quo with

respect to those interests," such that "the task of reestablishing the status quo if [plaintiffs] succeed[] . . . will be difficult and burdensome."  District of Columbia v. Potomac Elec. Power Co., 826 F. Supp. 2d 227, 234 (D.D.C. 2011) (citation omitted).

In the context of intervention in challenges to agency rules, the D.C. Circuit has explained that a sufficient legal interest—and concrete injury, for standing purposes—typically is established "where a party benefits from agency action, the action is then challenged in court, and an unfavorable decision would remove the party's benefit."  Crossroads, 788 F.3d at 317.  Prospective intervenors have a "significant and direct interest" in a favorable agency action where "the agency action at issue involve[s] potential direct regulation of [the applicants]," but even "indirect[]" and "tangential[]" benefits deriving from agency action can be sufficient for intervention and standing purposes.  Id. at 318 (first citing Military Toxics Project v. EPA, 146 F.3d 948 (D.C. Cir. 1998), and then citing Fund For Animals, 322 F.3d at 736).

The Court will separately consider whether the industry movants and Oklahoma each can establish that this action will impair a legally protected interest should plaintiffs succeed.

### i. Industry Movants

No party disputes that industry movants sufficiently describe cognizable legal interests that will be impaired should plaintiffs' challenge succeed.  Industry movants are—or represent members that are—Oklahoma utility companies that own and operate facilities subject to Oklahoma's CCR program regulations.  See OG&E Mot. at 1; USWAG & PSO Mot. at 2–3, 11; see also Military Toxics Project, 146 F.3d at 954 (finding standing and a protectible legal interest where industry association's "members . . . operate military firing ranges regulated under" the challenged rule).  And as described in the present motions and in industry movants' comments to the EPA before the program's approval, movants plausibly claim various undisputed benefits

7

stemming from their access to the program, including decreased compliance costs, the elimination of dual sets of overlapping regulations, and the provision of "addition[al] . . . regulatory certainty." USWAG Comments, Ex. B. to USWAG Mot. [ECF No. 18-3] at 4; see OG&E Mot. at 8–10; USWAG & PSO Mot. at 11–14. Such benefits will effectively be lost if plaintiffs succeed and the program is vacated. Moreover, resources spent for permits in pursuit of those benefits, including one submitted by OG&E, will have been wasted. See OG&E Mot. at 8–9; see also W. Org. of Res. Councils v. Jewell, Civ. No. 14-1993, 2015 WL 13711094, at *5 (D.D.C. July 15, 2015) (finding sufficient legal interest and injury-in-fact where applicants expended resources to submit lease applications that were "in various stages of review" by challenged state program (citation omitted)).

Plaintiffs seek to vacate the EPA's approval of Oklahoma's program. See Compl. at 25–26. Because there is no dispute that an unfavorable decision will impede industry movants' access to the benefits of that program, the Court finds that industry movants have shown that this action will impair a legally protected interest under Rule 24(a).[6]

    **ii. Oklahoma**

Oklahoma developed, proposed, and then obtained EPA approval of the coal ash program at issue in this action, which is codified in Oklahoma law. See Okla. Mot. at 3–4; Okla. Admin. Code § 252:517-1-1 et seq. Should plaintiffs succeed in vacating that approval, Oklahoma

---

[6] It follows from the Court's analysis in Part I.B.i of the second and third factors for intervention as of right that the industry movants have Article III standing to intervene. Denying movants the fruits of a prior favorable agency action—access to the challenged program—is the imminent injury; there is a causal connection between that injury and plaintiffs' suit; and the injury is capable of judicial redress. See Roeder, 333 F.3d at 233–34. Further, as is undisputed, USWAG has associational standing because at least one of its members (here, PSO) has standing to sue in its own right, the interests USWAG seeks to protect unquestionably are "germane to the organization's purpose," which is to represent electric utilities, and, because the questions at issue do not involve damages or other issues requiring individualized proof, "neither the claim asserted nor the relief requested requires the participation of individual members." Fund Democracy, LLC v. SEC, 278 F.3d 21, 25 (D.C. Cir. 2002); see Telecomms. Research & Action Ctr. v. Allnet Commc'n Servs., Inc., 806 F.2d 1093, 1094–95 (D.C. Cir. 1986).

contends, its state regulations—and the regulatory success it achieved by obtaining approval—will effectively be invalidated. See Okla. Mot. at 1–2, 6–7. Moreover, Oklahoma continues, its sovereign interest in regulating waste within its borders will be impaired. See id. at 6–8. Oklahoma claims that the practical effect of impeding these legal interests is, among other things, that its residents may have "less protection against CCR hazards than they currently enjoy." Id. at 7. Oklahoma accordingly contends, and no party disputes, that it has demonstrated standing and a protectible legal interest sufficient for standing and intervention as of right. See id. at 5–7.

The Court agrees. States generally have a protectible legal interest in enforcing state laws and in regulating waste within their border. See, e.g., Mayo v. Jarvis, Civ. No. 14-1751, 2014 WL 12804733, at *3 (D.D.C. Nov. 12, 2014) ("In light of Wyoming's undisputed interest in preserving its regulatory role as it pertains to the wildlife in its borders . . . the Court concludes that the State of Wyoming has demonstrated a legally protected interest in the action."); Wildearth Guardians, 272 F.R.D. at 18 (finding that state has legally protected interest in "preserving its role in regulating environmental quality within its borders"); Jewell, 2015 WL 13711094, at *6 (finding that state has unique protectible legal interest in enforcing its "natural resource management, environmental, and public safety regulations" (citation omitted)). Because this action could effectively invalidate state law codifying Oklahoma's CCR regulations, and because its disposition directly implicates the state's interest in regulating waste within its borders, the Court finds that Oklahoma has demonstrated a legal interest sufficient for standing and intervention as of right.

### C. Adequacy of Representation

Finally, applicants must show that the existing parties to this action do not already adequately represent the relevant interests. Defs. of Wildlife, 714 F.3d at 1322 (citing Fed. R. Civ. P. 24(a)(2)). As the D.C. Circuit has explained, "this last requirement for intervention [is] 'not

9

onerous,'" and "a movant 'ordinarily should be allowed to intervene unless it is clear that the [existing parties] will provide adequate representation." Crossroads, 788 F.3d at 321 (citations omitted); see also Mayo, 2014 WL 12804733, at *3 (describing applicants' burden under this factor as "de minimis," requiring only a "showing that there is a possibility that [applicants'] interests may not be adequately represented absent intervention").

    **i. Industry Movants**

Industry movants contend that the EPA cannot adequately represent their interests because movants are focused on the effects of this litigation on their (or their members') financial interests as owners and operators of CCR sites in Oklahoma, not the broad policy concerns potentially motivating the EPA. See OG&E Mot. at 11–12; USWAG & PSO Mot. at 14–15. Considering movants' minimal burden, the lack of any opposition, and the general principle that courts "look skeptically on government entities serving as adequate advocates for private parties," Crossroads, 788 F.3d at 321, the Court finds that industry movants have shown that the present parties will not adequately represent their interests.

    **ii. Oklahoma**

Oklahoma, for its part, argues that the EPA cannot adequately represent its interests because, inter alia, it has a special interest in preserving regulatory authority over CCRs "to the exclusion of federal jurisdiction," and that, as the entity that developed and proposed the program at issue, it "is uniquely positioned to explain to the Court how Oklahoma's current permitting scheme operates, as well as the likely effects of an adverse ruling." Okla. Mot. at 8–9. As with industry movants, the Court finds that Oklahoma has, in light of its de minimis burden and no opposition, established that the present parties will not adequately represent its interests.

## II. Conditions Upon Intervention

Plaintiffs do not dispute that applicants generally may intervene in this action as of right. Rather, plaintiffs ask only that the Court impose a restriction or limitation on the scope of the industry movants' intervention. See Pls.' Resp. in Opp'n to OG&E Mot. ("Pls.' Opp'n to OG&E Mot.") [ECF No. 19] at 2–3; Pls.' Resp. in Opp'n to USWAG & PSO Mot. [ECF No. 17] at 2–3. Specifically, plaintiffs contend that movants should be restricted from intervening as to their citizen suit, set forth in Count 1 of their complaint, which alleges that the EPA failed to publish minimum public participation guidelines for approval of state CCR programs. See Pls.' Opp'n to OG&E Mot. at 3–5. Such a restriction is warranted, plaintiffs say, because unlike their APA challenges set forth in Counts 2 through 7, the allegations in the citizen suit "would not be remedied by vacatur of EPA's approval of Oklahoma's coal ash program," but rather by a declaratory judgment finding that the EPA violated RCRA and an injunction requiring that the guidelines be issued. Id. at 4–5 & n.2. Because these proposed remedies would cause no imminent harm or injury to industry movants, plaintiffs argue, movants lack standing specifically to oppose the citizen suit. Id. at 5. Plaintiffs additionally contend that industry movants' intervention as to the citizen suit, even if granted, would undermine the efficient resolution of this action. See id. at 5–6. One of their APA claims (Count 3) challenges the Oklahoma program on precisely the same grounds as their citizen suit, plaintiffs explain, and they do not oppose intervention as of right with respect to that claim. See id. Accordingly, to permit intervention also as to the citizen suit (Count 1) "would be superfluous and unnecessary, resulting in undue delay . . . a waste of judicial resources, and prejudice to [plaintiffs]." Id.

In response, industry movants argue that there is no reason to limit artificially their intervention to certain counts because, as plaintiffs concede, Counts 1 and 3 necessarily require

11

resolving the same legal question: Count 1 alleges that the EPA failed to perform a nondiscretionary duty under 42 U.S.C. § 6974(b)(1), Compl. ¶¶ 64–70, and Count 3 alleges that the EPA's approval was arbitrary and capricious <u>because</u> the EPA failed to perform the same nondiscretionary duty under the same provision, <u>id.</u> ¶¶ 79–83. <u>See</u> Reply Br. in Supp. of OG&E Mot. ("OG&E Reply") [ECF No. 24] at 4–5; Reply Br. in Supp. of USWAG & PSO Mot. ("USWAG & PSO Reply") [ECF No. 30] at 4–5. For the Court to resolve Count 3—which plaintiffs essentially concede movants have "full rights" to oppose, Pls.' Opp'n to OG&E Mot. at 5—the Court must first determine whether the EPA failed to perform the nondiscretionary duty described in Count 1, thus resolving both claims. USWAG & PSO Reply at 4–5. Put another way, an arbitrary restriction on intervention is of no help because, as pled, "Count 1 is effectively an element of Count 3." OG&E Reply at 5.

The Court agrees with industry movants. No party disputes that they may intervene to oppose plaintiffs' APA claim alleging the EPA failed to meet a nondiscretionary duty under RCRA. And no party disputes that such intervention necessarily will entail arguing the substance of plaintiffs' citizen suit premised on the identical allegation. There is accordingly no reason for the Court to reach whether industry movants separately have standing to intervene as to plaintiffs' citizen suit, and then to impose conditions or restrictions accordingly. Any such limitations would have no practical impact on the resolution of this litigation other than to create confusion, which contradicts the purpose of placing conditions on parties' intervention in the first place—<u>i.e.</u>, to ensure the "fair, efficacious, and prompt resolution of the litigation." <u>Forest Cty. Potawatomi Cmty. v. United States</u>, 317 F.R.D. 6, 15 (D.D.C. 2016); <u>see also</u> <u>Cayuga Nation v. Zinke</u>, 324 F.R.D. 277, 284 (D.D.C. 2018) (explaining that when considering restrictions upon parties' intervention, "the district court should remain attuned to the two conflicting goals of intervention:

12

i.e., 'to achieve judicial economies of scale . . . and to prevent the single lawsuit from becoming fruitlessly complex or unending'" (quoting Smuck v. Hobson, 408 F.2d 175, 179 (D.C. Cir. 1969)). Accordingly, the Court will not restrict or limit industry movants' intervention with respect to Count 1 of the Complaint.[7]

However, to the extent plaintiffs attempt to convey their worry that intervention without any limitation will result in undue delay and confusion because of redundant briefing on substantially overlapping issues, the Court shares that concern. In similar circumstances, courts have used their discretion to impose conditions that help to promote the fair and expeditious resolution of the action. See Forest Cty., 317 F.RD. at 15–16 (requiring parties to meet and confer prior to filing of any motion to prevent duplicative briefing); Earthworks v. U.S. Dep't of Interior, Civ. No. 09-01972, 2010 WL 3063143, at *2 (D.D.C. Aug. 3, 2010) (requiring intervenor-defendants and defendants to "consult" and to present only arguments that "other parties do not advance"); Cnty. of San Miguel, Colorado . v. MacDonald, 244 F.R.D. 36, 48 n.17 (D.D.C. 2007) (limiting intervention to claims within the complaint).

Accordingly, the Court finds it warranted to impose the following restrictions and conditions upon defendant-intervenors in this action:

- Intervenor-defendants and current defendants shall meet and confer before filing any pleadings, motions, or briefs to determine whether their positions may be set forth in a single consolidated filing. Intervenor-defendants shall not file separate pleadings, motions, or briefs that repeat the same arguments presented by defendants or as one another. Separate filings shall be accompanied by a joint

---

[7] The Court takes no position on whether movants independently may intervene as of right as to the citizen suit. But even were that question necessary to resolve (which it is not), and the Court found no standing as to that claim, the Court would grant industry movants permissive intervention pursuant to Federal Rule of Civil Procedure 24(b). Rule 24(b) provides that "the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact," so long as intervention will not "unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b); see In re Endangered Species Act Section 4 Deadline Litig.-MDL No. 2165, 704 F.3d 972, 980 (D.C. Cir. 2013) (noting that district courts enjoy "wide latitude" to permit intervention under Rule 24(b) (citation omitted)). For the reasons described above, the Court finds that the industry movants have a claim or defense that shares a common legal question with the citizen suit and that intervention as to that claim would not delay or prejudice the fair resolution of the present parties' rights.

certification of compliance with this requirement and shall describe the need for separate filings. Within filings, claims involving identical substantive arguments should, to the extent possible, be addressed together;

- Intervenor-defendants shall confine arguments to the existing claims in this action and shall not introduce new claims or collateral issues.

The Court finds that these conditions will help to avoid unnecessarily duplicative briefing while maintaining defendants' and defendant-intervenors' rights to present arguments protecting their interests.

## **CONCLUSION**

For the foregoing reasons, the Court will grant [12], [14], and [18], movants' motions to intervene. The Court further orders intervenor-defendants to comply with the conditions set forth in this opinion. A separate Order will issue on this date.

/s/
JOHN D. BATES
United States District Judge

Dated: January 29, 2018